UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                                  Chapter 7

CHARLES DeGENNARO, III,                                 Case No. 18-35222 (CGM)



          Debtor.
--------------------------------------------------------X
CRESCENT ELECTRIC SUPPLY
COMPANY, INC. OF NEW YORK,                               Appellate Case No. 20-cv-07958-CM

          Plaintiff-Appellee                            Bankruptcy Adv.Pro.No. 18-09032

     v.

CHARLES DeGENNARO III,

          Defendant-Appellant.
--------------------------------------------------------X


**<u>BRIEF OF DEFENDANT-APPELLANT CHARLES DEGENNARO III</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................iii

PRELIMINARY STATEMENT.........................................................................2

STATEMENT OF FACTS ………..................................................................4

CRESCENT'S LIEN LAW CLAIM ……………………………………………13

STANDARD OF REVIEW ……………………………………….…………...16

ARGUMENT.................................................................................................15

I.      DEGENNARO WAS DENIED AN OPPORTUNITY TO BE HEARD
        PRIOR TO BEING SANCTIONED AND THE SAME CONSTITUTES
        REVERSIBLE ERROR……………………………………………………17

        A.  It Was Reversible Error for the Court to Refuse to Consider
            DeGennaro's Objection to Sanctions………………………………….19

II.     THE BANKRUPTCY COURT FAILED TO ANALYZE WHETHER
        DEGENNARO WAS SUBSTANTIALLY JUSTIFIED IN OBJECTING
        TO CRESCENT'S DISCOVERY REQUESTS AND THE SAME
        CONSTITUTES REVERSIBLE ERROR…………………………………20

III.    THE PRESENCE OF OTHER CIRCUMSTANCES MAKE THE
        IMPOSITION OF SANCTIONS UNJUST…………………………………..21

        A.  Crescent's Receipt of Substantially All of Innovative's Financial,
            Accounting, Tax and Banking Records from Provident Bank in
            September 2019, and Its Failure to So Inform the Court, Renders the
            $22,500 Sanction Unjust……………………………………………..22

IV.     INSOFAR AS THE SANCTIONS ORDER WAS PREMISED ON A
        FUNDAMENTALLY FLAWED AND ERRONEOUS APPLICATION OF
        RULES 26 AND 37 IT MUST BE SET ASIDE……………………….. 23

        A.  The Bankruptcy Court Impermissibly Permitted Plaintiff To Engage
            In A Fishing Expedition Based on Pure Conjecture and Speculation… 23

**B. The Bankruptcy Court Misapprehended and Misapplied Rule 37 In Sanctioning DeGennaro $22,500 While DeGennaro's Emergent Motion for a Stay of the Sanctions Order #1 Remained Outstanding and Undecided**……………………………………………………..………..26

**C. The Bankruptcy Court Further Impermissibly Permitted the Discovery of Tax Returns**………………………………………………..27

**D. The Bankruptcy Court Further Impermissibly Permitted the Discovery of Tax Returns**………………………………………………..19

**V. IF THE COURT DETERMINES THAT THE BANKRUPTCY COURT DID NOT COMMIT REVERSIBLE ERROR IN ISSUING $22,500 IN SANCTIONS THE INTERESTS OF JUSTICE MILITATE IN FAVOR OF THE EXERCISE OF THIS COURT'S INHERENT POWERS TO SET ASIDE THE SANCTIONS ORDER #2**…………………………………28

**CONCLUSION**…………………………………………………………………28

# TABLE OF AUTHORITIES

## Cases

*Carmody v. Vill. of Rockville Centre,* 2007 WL 2042807 (E.D.N.Y. July 13, 2007)…………..  27

*Chen v. Republic Rest. Corp.,* No. 07 Civ. 3307, 2008 WL 793686 (S.D.N.Y. 2008)…..……..  27

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)……………………………………………………………………………………………17

*Ellis v. City of New York,* 243 F.R.D. 109, 111–12 (S.D.N.Y.2007)……………………………27

*Evans v. Calise,* No. 92–CV–8430, 1994 U.S. Dist. LEXIS 6187, 1994 WL 185696 (S.D.N.Y. May 11, 1994)………………………………………………………………………………24

*Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 30 (1st Cir. 1994)…………………………..16

*Grider v. Keystone Health Plan Central, Inc.,* 580 F.3d 119 (3d. Cir. 2009)…………………..20

*In re AroChem Corp.,* 176 F.3d 610, 620 (2d Cir.1999)………………………………………..16

*In re Bayshore Wire Prods. Corp.,* 209 F.3d 100, 103 (2d Cir. 2000)…………………………16

*In re Bennett Funding Group, Inc.,* 146 F.3d 136, 138 (2d Cir.1998)…………………………16

*In re Blaise,* 219 B.R. 946 (2d. Cir. 1998)………………………………………………………17

*In re Century Boat Co.,* 986 F.2d 154, 156 (6th Cir. 1993)……………………………………..16

*In re Chase & Sanborn Corp.,* 904 F.2d 588 (11th Cir. 1990)…………………………………..16

*Markus v. Rozhkov,* 615 B.R. 679, 695 (S.D.N.Y. 2020)………………………………………..16

*Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir. 1992)…………………………………..16

*In re Investment Bankers, Inc.,* 4 F.3d 1556, 1560 (10th Cir. 1993), *cert. denied,* 114 S. Ct. 1061 (1994)………………………………………………………………………………...……16

*Matter of Rigdon,* 36 F.3d 1375 (7th Cir. 1994)………………………………………………...16

*Matter of Wiredyne,* 3 F.3d 1125, 1126 (7th Cir. 1993)…………………………………………16

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)……………………………………………………………...……………24

*Samuels v. Eleonora Beheer, B.V.,* 500 F.Supp. 1357, 1362 (S.D.N.Y.1980), *aff'd,* 661 F.2d 907 (2d Cir.1981)………………………………………………………….......24

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 598 B.R. 102 (S.D.N.Y. 2019)……17

*Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y.1979)……………………………………………27

*Surles v. Air France.* 2001 WL 815522, *4 (S.D.N.Y. 2001)……………………………………25

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989)………..…………...24

*Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023 (S.D.N.Y. 2002)…….…………24

*United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974)…………..…..

*United States v. Bonanno Family of La Cosa Nostra,* 119 F.R.D. 625, 627 (E.D.N.Y.1988)…..27

*United States v. Consolidated Edison Co. of New York,* 1988 WL 138275, (E.D.N.Y. 1988)………………………………………………………………………………...…25

*Williams v. United States*, 215 B.R. 289, 299 (D.R.I.1997)………………………………..17

## Rules and Statutes

Fed.R.Civ.P. 6………………………………………………………………...………11,19

Fed.R.Civ.P. 26……..………………………………………………….. 3, 23, 24

Fed.R.Civ.P. 37……..……………………………………………………… 3, 16, 17, 20

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:                                            Chapter 7

CHARLES DeGENNARO, III,                           Case No. 18-35222 (CGM)


            Debtor.
---------------------------------------------------------X
CRESCENT ELECTRIC SUPPLY
COMPANY, INC. OF NEW YORK,                         Appellate Case No. 20-cv-07958-CM

            Plaintiff-Appellee,                   Bankruptcy Adv.Pro.No. 18-09032

      v.

CHARLES DeGENNARO III,

            Defendant-Appellant.
---------------------------------------------------------X


## <u>BRIEF OF DEFENDANT-APPELLANT CHARLES DEGENNARO III</u>

Defendant-Appellant, Charles DeGennaro III (hereinafter "DeGennaro") by his attorneys, Ruta Soulios & Stratis LLP, hereby submits this memorandum of law in support of DeGennaro's motion for an order granting a stay of that certain order entered on September 4, 2020 (ECF# 168) (the "Order"), granting in part and denying in part Defendant's motion for reargument and modifying that certain amended order dated September 19, 2019 (the "Amended Order") (which granted Plaintiff's motions for to compel and for sanctions, and awarded $5,685.43 in attorneys' fees) and imposed a $22,500 sanction against DeGennaro.

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

By this appeal DeGennaro seeks review and reversal of the order of the Hon. Cecilia G. Morris, Chief United States Bankruptcy Judge, entered on September 4, 2020 ("Sanctions Order #2") whereby the bankruptcy court imposed a $22,500 sanction against DeGennaro related to a discovery matter arising in a single cause of action adversary proceeding seeking to except from discharge a $188,000 debt owed by DeGennaro's former electrical services company.

The undisputed facts in this case present a stunning denial of fundamental due process rights to a litigant who is exercising his constitutional right to bankruptcy relief, and an egregious and repeated failure by the bankruptcy court to apply the most basic Federal Rules of Civil Procedure concerning discovery disputes. Most importantly, for purposes hereof, there is absolutely no evidence that DeGennaro deliberately failed to comply with legitimate discovery requests or the bankruptcy court's order, or in any way demonstrated contumaciousness. Rather, the record is clear that DeGennaro was substantially justified in objecting to document requests. There is no evidence in the record to demonstrate that DeGennaro had possession of or access to Innovative's books and records. In fact exactly the opposite. Moreover, the record evidence conclusively establishes that document requests served by Crescent were nothing more than a palpably improper fishing expedition – Plaintiff was using discovery to fish for evidence that might support its claims of "conscious misbehavior."

In reviewing the propriety of such a discovery sanction, this Court must look at the predicate acts and proceedings that preceded its entry, for they bear on the very legitimacy of the Sanctions Order #2 itself; for the Sanctions Order #2 amended and modified a prior sanctions order issued by the bankruptcy court on September 19, 2019, ("Sanctions Order #1) whereby the bankruptcy court initially imposed a sanction of $250/day and awarded attorneys' fees in the

2

amount of $5,600.  As will be shown below, it was reversible error for the bankruptcy court to sanction DeGennaro $250 per day without ever having analyzed whether he had a substantial justification in objecting to Crescent's discovery requests.

The record evidence further demonstrates the existence of "other circumstances" that render the imposition of $22,500 in sanctions patently unjust and violative of Rule 37(a)(5)(iii).

As will be shown herein, the bankruptcy court profoundly misapprehended and misapplied Fed.R.Civ.P. §§ 26 and 37 and the New York Lien Law  and  imposed a draconian sanction on an individual who is demonstrably unable to pay same. The bankruptcy court erred in endorsing and approving a blatant fishing expedition compelling the production of eight (8) years' worth of "all" of DeGennaros personal financial and banking and tax return records dating back to 2011 notwithstanding the fact that Plaintiff's claim is limited to an alleged diversion of Lien Law trust funds received by DeGennaro's former company Innovative Electrical Services LLC in 2017. Specifically, Plaintiff claims that from February 2017 to November 2017 it delivered materials and supplies valued at $188,000, to jobs for which Innovative was an electrical subcontractor on, that Innovative subsequently received payment for those materials and supplies from the general contractors, and thereafter DeGennaro allegedly diverted those trust funds to himself. In order to prevail on its claim that DeGennaro diverted Lien Law "trust funds" Plaintiff must prove that funds received by Innovative in 2017 were tortiously diverted to himself thereafter. Insofar as Plaintiff's claim relates directly and only to tracing funds that allegedly came into the possession of Innovative in 2017, compelling the production of eight (8) years of virtually every imaginable personal financial record – credit card statements, bank statements, canceled checks, transfer to his wife and son, tax returns – and thereafter sanctioning DeGennaro $22,500 for not producing

same notwithstanding the pendency of a motion for a stay and a motion for reconsideration, was clearly erroneous.

## STATEMENT OF FACTS

1.      According to the Complaint, from 2016 to 2017, Crescent "sold and delivered certain  electrical supplies and related materials ("Crescent Materials") to Innovative Electrical Services," an entity that DeGennaro was a member of until it ceased operating in or about September 2017.  *See* **ECF[1] #1**, Cmplt., ¶9. However the spreadsheet attached to the complaint itemizing the materials and supplies furnished establishes that the first invoice was issued by Crescent in February 2017. *See* **Exhibit A** to ECF#1 (also attached as Exhibit 2 to DeGennaro's motion for a stay pending appeal).

2.      Crescent further alleges that Innovative received payment on the jobs for which the Crescent Materials were furnished, and that ***those funds*** constituted trust funds under the New York Lien Law. *See* **ECF #1**, ¶¶14-15. Crescent asserts a single cause of action against DeGennaro under 11 U.S.C. §523(a) (2), (4) and (6). By its own allegations Crescent's claim relates solely to the funds allegedly paid to Innovative from the general contractor on jobs that the Crescent Materials were delivered to in **2017**.  Funds that Innovative received for work performed (i) prior to 2016 or (ii) during and after 2016 that did not involve Crescent Materials, are totally irrelevant to Crescent's Lien Law claim based upon diversion of trust funds.

3.      Notwithstanding the very limited and narrow scope of facts and issues presented by its single cause of action covering alleged diversionary transfers made by Innovative to DeGennaro in 2017 or after, Crescent served an abusive and vexatious document request (numbering 53 requests in total) seeking eight years (i.e. dating to 2011) seeking virtually every

---

[1] Unless otherwise indicated all references to "ECF" are to the numbered docket entries in the adversary proceeding below, *Crescent v. DeGennaro*, bearing Adv.Pro.No. 18-09032.

type of personal financial document imaginable, including tax returns, bank statements, canceled checks, credit card statements, payments made to family members, payments DeGennaro received from employers <u>post-petition</u>, as well as wholly irrelevant documents pertaining to Innovative including "Financial books and records of the Debtor and Innovative Electrical Services LLC for the years 2011, 2012, 2013, 2014, 2015, 2016, 2017 and 2018," and "all documents reflecting or analyzing the financial and business performance of Innovative Electrical Services LLC for the years 2012 to present." None of those documents have any bearing on or relevance whatsoever to the conclusory allegation that DeGennaro diverted lien law trust funds from jobs Crescent delivered materials to in 2017. Accordingly, DeGennaro objected to the relevance of those requests "as not reasonably calculated to lead to discoverable information and otherwise palpably improper. DeGennaro further informed Plaintiff that due to his ouster from Innovative by Bartolomeo, where he was physically locked out of the premises and denied electronic access to the company's records, that he did not have possession, custody or control of Innovative documents from 2017 that were relevant to the action.

    4.    On July 18, 2019, DeGennaro served Responses and Objections ("DeGennaro Responses") to Crescent's document requests, a copy of which was attached to DeGennaro's opposition to Crescent's motion for sanctions. *See* **ECF# 101** (see also **Exhibit 3** to the Stay Motion). Throughout the DeGennaro Responses DeGennaro reiterated the fact the overwhelming majority of documents that Crescent was seeking, either pertaining to Innovative and/or projects involving Crescent, were in **not in his possession custody or control,** but rather were in the possession and control of his former business partner Anthony Bartolomeo ("Bartolomeo"). *See*, e.g. DeGennaro's response to the Request Nos.:

-   #2 - balance sheets of Innovative;
-   #3 - bank statements of Innovative;

5

- #5 - invoices, purchase orders, agreements and related documents concerning Crescent Electric Supply Co. and Innovative;
- #7 - accounts payables of Innovative;
- #9 - payments made to Bartolomeo;
- #10 - payments made by RX Electric, Inc. to Innovative;
- #14 - revenues and/or income of Innovative;
- #15 - contracts to perform any type of work for labor and/or services by Innovative;
- #17 - financial statements and audits prepared for Innovative;
- #18 - financial books and records of Innovative;
- #19 - financial records, including monies received and expended, concerning the project in which Crescent provided goods and services for Innovative;
- #22 – correspondence between DeGennaro and Bartolomeo;
- #23 – correspondence concerning all projects in which Crescent provided goods and services to Innovative;
- #24 – correspondence between Innovative and all other contractors/vendors which worked on any of the projects in which Crescent provided goods and services to Innovative;
- #26 - correspondence exchanged between Innovative and the owner(s) of any property with respect to any materials supplied by Crescent;
- #27 - between Bartolomeo and all other contractors/vendors which worked on any of the projects in which Crescent provided goods and services to Innovative;
- #28 – correspondence concerning the projects in which Crescent provided goods and services to Innovative;
- #29 – correspondence between Innovative and any contractor or subcontractor with respect to any materials supplied by Crescent;
- #30 – correspondence between Innovative and the owner(s) of any property with respect to any materials supplied by Crescent.
- #31 – checks and other payment methods (e.g., wire transfers, credit card payments, etc.) reflecting payments made to Innovative concerning any materials supplied by Crescent;
- #32 - copies checks and other payment-methods reflecting payments made by Innovative to Crescent;
- #34 – copy of payment or performance bond associated with any project where Innovative provided contracting services and where materials supplied by Crescent were used;
- #35 - documents concerning any complaints made with respect to Crescent's performance concerning any material supplied to Innovative;
- #51 documents reflecting or analyzing the financial and business performance of Innovative for the years 2012 to present.
- #53 documents reflecting the corporate minutes and all corporate resolutions of Innovative for the years 2012 to present.

4.     Since November 16, 2018, when DeGennaro filed an answer to Crescent's

complaint and cross claimed against Bartolomeo and RX Electric, Inc. (ECF# ), the bankruptcy court (as well as Crescent) was aware of the allegations made by DeGennaro, to wit, that in or about September 2017, Bartolomeo effectively converted the business and assets and books and records of Innovative, and transferred them to an entity named RX Electric.  *See* **ECF#4**, ¶¶ 44-60, 68-76.

5.      In opposition to Plaintiff's motion to compel below DeGennaro further provided copies of documentary evidence wherein DeGennaro asserted that:

"Bartolomeo excluded [DeGennaro] from Innovative offices by changing the locks and also denied [DeGennaro] access to Innovative server, bank accounts etc." *See* **ECF #101**, Exhibit 6, to wit, correspondence sent to Bartolomeo's counsel on October 20, 2017, (see also Exhibit 4 to the Stay Motion; and

"my client has been asking for months for access to Innovative financial and bank records. Mr. Bartolomeo has completely failed to provide said record despite multiple demands by Mr. DeGennaro." *See* **ECF #101**, Exhibit 7, to wit correspondence sent to Bartolomeo's counsel on November 10, 2017 (see also Exhibit 5 to the Stay Motion**).**

6.      Indeed, Plaintiff adopted DeGennaro's contentions concerning Bartolomeo, commencing an action against RX Electric on July 25, 2019 in the Supreme Court of the State of New York, County of Westchester. ECF #114, Exhibit 2 (a copy of which is attached to the  as Exhibit 6). In its action against RX Electric Crescent alleges:

Anthony Bartolomeo converted and misappropriated INNOVATIVE funds as alleged by DeGennaro in his cross-claims against Anthony Bartolomeo  in his bankruptcy proceeding, In Re DeGennaro, Adv. Pro. 19-09032 pending in the Bankruptcy Court in and for the Southern District of New York (the "Cross claim"). A copy of which is attached as Exhibit "D" and is incorporated herein by reference.

Upon information and belief, Anthony Bartolomeo closed down INNOVATIVE and immediately opened a new entity RX. (Cross Claim at ¶ 54).

> Upon information and belief, RX Electric engages in the substantially same business as INNOVATIVE, at the same location (to wit, the Saw Mill Road property), and uses the same phone number (914-966-4083). Attached as Exhibit "E" is a printout of the RX website (rxelectric.com) evidencing same. (Cross Claim at ¶ 55).
>
> Upon information and belief, Anthony Bartolomeo hired substantially all of the employees of INNOVATIVE for RX. (Cross Claim at ¶ 57).
>
> Upon information and belief, Anthony Bartolomeo used RX to fulfill the projects begun by INNOVATIVE. (Cross Claim at ¶ 58)
>
> Upon information and belief, Anthony Bartolomeo converted and transferred all of INNOVATIVE's trucks and electrical equipment and used them to fulfill the INNOVATIVE projects that RX had taken over. (Cross Claim at ¶ 59)

See ECF #114, Exhibit 2, at ¶¶41-47.

7.      Crescent further alleged that Bartolomeo and RX Electric succeeded to millions of dollars in electrical contracting projects that initiated with, and were otherwise the corporate opportunities of, Innovative. *See* ECF #114, Exhibit 2, at ¶¶27-39.

8.      Accordingly, at a time when it was representing to the bankruptcy court that it could not obtain Innovative documents from DeGennaro (and was seeking to have DeGennaro sanctioned for their non-production), notwithstanding having received responses to discovery requests from DeGennaro wherein he repeatedly reiterated the fact that he did not have access to any of Innovative's books and records, Crescent was prosecuting successor liability claims against RX Electric based on the material truthfulness of DeGennaro's allegations.  *See* Exhibit 6 to the Stay Motion.

9.      At no time did Crescent inform the bankruptcy  court in its motion to compel, or at the hearing, that it was in fact prosecuting claims against RX Electric wherein it would be able to discover many of the very same documents it knew that DeGennaro did not possess.

10.     In addition to commencing an action against RX Electric, and *prior* to the filing of its motion to compel against DeGennaro, Crescent, on July 30, 2019, filed an adversary proceeding in the Chapter 7 bankruptcy of Anthony Bartolomeo seeking, pursuant to 11 U.S.C. 523, to preclude Bartolomeo from discharging Innovative's debt to Crescent. Crescent's non-discharge complaint is premised upon the same Lien Law claims arising from Crescent Materials delivered to Innovative in 2016 and 2017. *See* Exhibit 7 to the Motion to Stay.

11.     At a hearing before the Court on July 30, 2019 (the same day that Crescent's counsel filed its adversary complaint against Bartolomeo), in connection with the Chapter 7 Trustee's motion to sell and assign certain claims to DeGennaro, the bankruptcy court was informed that Bartolomeo had recently filed (on July 16, 2019) a Chapter 7 petition in the Bankruptcy Court for the Southern District and that the case had been assigned to the Hon. Shelley C. Chapman. Accordingly, the bankruptcy court knew that Bartolomeo was subject to the jurisdiction of this Court and the broad discovery available under Rule 2004.

12.     At no time did Crescent inform the bankruptcy court in its motion to compel, or at the hearing on August 27, that it was in fact prosecuting claims against Bartolomeo wherein it would be able to discover the very same documents it knew that DeGennaro did not possess, and for which it nonetheless sought to compel DeGennaro to produce and/or be sanctioned for.

13.     Crescent filed a motion to compel on August 15, 2019, setting August 27, 2019 as the hearing date. See ECF #100. Plaintiff's notice of motion further provided "that pursuant to Southern District of New York Local Bankruptcy Local Rule 9006-1, any papers in opposition to this Motion must be filed with the Bankruptcy Court and served upon all parties no later than three (3) days in advance of the hearing date." Three days prior to the hearing date was a Saturday, August 24, 2019.

14.     Notably, Crescent failed to attach to its motion to compel copies of DeGennaro's Responses and Objections to Crescent's Document Requests, thus preventing the bankruptcy court from learning about DeGennaro's (i) lack of possession of responsive documents concerning Innovative and (ii) objections to the production of (a) eight (8) years' worth of "all" personal financial, banking and credit card documents and (b) eight (8) years' worth highly personal joint tax returns that DeGennaro filed with his wife Jennifer DeGennaro.

15.     On August 26, 2019, DeGennaro served an opposition to Crescent's motion to compel ("Objection to Sanctions"). The Objection to Sanctions demonstrated the extraordinary efforts DeGennaro had gone through in the prior months trying to obtain documents from both Bartolomeo and RX Electric, only to be stonewalled by motions to dismiss his cross claims and motions to quash subpoenas directed to each of them. *See* DeGennaro Opposition at pp. 3-5. DeGennaro further informed the Court that on August 22 and 23 he filed applications for Rule 2004 examinations of RX Electric and Bartolomeo, respectively, in Bartolomeo's Chapter 7 case. *See* ECF #101 (also attached as Exhibit 8 to the Stay Motion).

16.     DeGennaro's opposition further demonstrated that the Motion to Compel impermissibly sought to compel production of documents that (i) Crescent knew DeGennaro did not possess, (ii) were wholly irrelevant to its Section 523 non-discharge claim premised on materials delivered to Innovative in 2016-2017, including DeGennaro's tax returns for eight years (2011-2018), post-petition employment records, eight years of bank statements (2011-2018), eight years of credit card statements (2011-2018). The DeGennaro Opposition asserted that, insofar as Crescent's Lien Law trust fund claim relates exclusively to funds that were paid to Innovative on jobs that Crescent delivered materials to from 2016-2017, the document requests were vexatious and harassing.

17.     At the August 27, 2019, hearing on Crescent's motion to compel, the Court indicated that it had not received or considered the DeGennaro Opposition.  DeGennaro's counsel indicated that insofar as Crescent's notice of motion called for service of opposition papers three days prior to the hearing date, i.e. August 24, a Saturday, pursuant to Fed.R.Civ.P. 6, DeGennaro's time to file written opposition papers was extended to August 26. Yet it was clear at the hearing that the Court did not consider the facts and arguments set forth in the DeGennaro Opposition, nor did it have an opportunity to ever review the 53 document requests made by Crescent, and DeGennaro's Responses and Objections thereto.

18.     The Court granted Plaintiff's motion to compel at the August 27 hearing and directed its counsel to submit a proposed order.  Plaintiff's counsel departed from the normal practice in this district and submitted a proposed order without first submitting it to opposing to counsel for comment or objection. The bankruptcy court entered an order awarding Crescent $5,685 in attorneys' fees. The first time DeGennaro saw the claimed amount of $5,685.43 in attorney's fee was when the Court entered the Amended Order and incorporated Plaintiff's "Pre-Bill." The Amended Order also sanctioned DeGennaro $250 every day that he did not produce "all" of the documents set forth in Crescent's document requests.

19.     DeGennaro timely moved for reconsideration of the Amended Order and for a stay of enforcement of same pending the court's determination of the motion. *See* ECF# 111, 112.

20.     At the time that Crescent had first moved to compel DeGennaro to produce, *inter alia*, documents pertaining to Innovative, it had already served (on August 7, 2019) a subpoena on Provident Bank, the financial institution that handled all of Innovative's banking and lending matters, including Innovative's business operating account. *See* ECF #166, Defendant's Exhibit 7 (also attached as Exhibit 9 to the Stay Motion).  Plaintiff never informed the bankruptcy court

that, at the time that it was seeking to have DeGennaro sanctioned for not producing Innovative

records, it was simultaneously seeking their production from Innovative's bank Provident. Most

importantly, on or about September 9, 2019, Provident made an initial production to Crescent of

781 pages of Innovative financial, banking and tax documents, including:

> Financial statements prepared by Innovative's accountants for the years 2011 through June 30, 2017, including Balance Sheets, Income Statements, Cash Flow Statements, Statements of Selling General and Administrative Expenses, Schedule of Contracts, Schedule of Gross Profits, Job Estimates v. Actual Summary, Account Payable Aging Summaries, Invoice Aging By Job Statements, Aged Accounts Receivables Reports, Profit and Loss Statements, Statements of Assets Liabilities and Equity, Brokerage Account Statements of DeGennaro personally, Personal Tax Returns of Charles and Jennifer DeGennaro for the years 2010-2015, Innovative Tax Returns for the years 2010-2014.

Provident subsequently produced to Crescent 437 pages of Innovative Checking/Operating Bank

Statements (including canceled checks) for the period January 20, 2017 to December 29, 2017.

All of the aforementioned documents produced by Provident to Crescent were submitted to the

bankruptcy court and made a part of the record at the evidentiary hearing conducted by the court

on August 21, 2020 (discussed more fully below). *See* ECF #166, Defendant's Exhibit 8, 9, 10

(Exhibits 10, 11 and 12 to the Stay Motion).

21.     Notwithstanding the pendency of his motions for reconsideration and a stay,

immediately upon entry of the Sanctions Order #1 DeGennaro made a substantial production of

documents to Crescent, substantially the same documents that were produced to the Chapter 7

Trustee Fred Stevens, the U.S. Trustee, Provident Bank (the largest creditor of Innovative at

approximately $1.7 million), and CooperFriedman (which had an identical §523(a)Lien Law clam

for $680,000), all pursuant to the much broader Bankruptcy Rule 2004, <u>without any objection

from any party as to the sufficiency of the production</u>.

22.     In addition, on August 23, 2019, DeGennaro filed several Rule 2004 applications

in Bartolomeo's bankruptcy proceeding seeking the examination of Bartolomeo and RX Electric,

and all of the Innovative related documents that Crescent had sought from DeGennaro. *See* ECF #s 18 and 19 in *In re: Bartolomeo*, Case No. 19-12294-SCC. The Hon. Shelley C. Chapman has yet to rule on DeGennaro's Rule 2004 applications.

23.     Provident Bank, which had loaned Innovative approximately $1.7 million, has also sued RX Electric on similar theories of successor liability. *See* Exhibit 13 to the Stay Motion.

24.     In 2019 Bartolomeo field for Chapter 7 and Crescent has brought a similar Section 523(a)/Lien Law non-discharge action against him, and DeGennaro has also filed a non-discharge action against Bartolomeo under Sections 523 and 727 of the Bankruptcy Code.  *See* Adv. Pro. Nos. 19-01328  and 19-01370, respectively.

## Crescent's Lien Law Claim

25.     In order for Crescent to prevail on its single Section 523 non-discharge claim, it must not only show that Innovative was paid on the projects that it delivered materials to it in 2017, but that DeGennaro diverted those funds with a "conscious misbehavior" or "extreme recklessness" and "requisite scienter." *In re Waldron*, 2015 WL 6734481, *4, 6 (Bankr. N.D.N.Y. 2015), citing N.Y. Lien Law§§ 70, 71.Id., at *6. Accordingly, discovery in Plaintiff's case is limited exclusively to the disposition of alleged trust funds associated with the contracting jobs that Crescent delivered materials and supplies to in 2017, and for which Innovative was paid by the general contractor.

## Evidentiary Hearing and Bankruptcy Court Ruling

26.     On August 21, 2020, the bankruptcy court conducted an evidentiary hearing in connection with DeGennaro's motion for reconsideration. During the evidentiary hearing, which the bankruptcy court used to effectively merge the motion to compel into the motion for reconsideration, Crescent argued that although it had no factual basis for asserting that

DeGennaro had done anything improper prior to Crescent's delivery of materials to Innovative in 2017 so as to warrant discovery of 8 years of personal financial information and tax returns, it was entitled to conduct a fishing expedition to see if there were any other bad acts by DeGennaro because of its burden to prove DeGennaro diverted lien law trust funds with a "conscious misbehavior" or "extreme recklessness" and "requisite scienter" as set forth in *In re Waldron*. Crescent erroneously argued that if it discovered other alleged acts of "conscious misbehavior" or "extreme recklessness" and "requisite scienter" of DeGennaro in wholly unrelated matters, it could use those acts to prove that DeGennaro acted with such requisite scienter in diverting the lien law trust funds from Innovative in 2017. It is important to note that at no time did Crescent provide any factual or evidentiary support for the extremely overbroad document requests into wholly irrelevant matters. Indeed, the complaint failed to provide any factual or evidentiary basis for the conclusory allegation that DeGennaro diverted Lien Law trust funds. It was pure speculation phrased in the form of an allegation.

27.     Notably, the Innovative bank statements that Crescent received from Provident Bank covering the period in question, to wit. February 2017 to November 2017, <u>reveal no such "diversions" of lien law trust funds</u>. Crescent realized that back in September 2019, realized it could not prove any wrongful diversion, and effectively turned this case into an abusive and vexatious prosecution of a discovery dispute when all along it had the relevant documents in its possession but failed to inform the court of same.  To that end it bears noting that in October 2019, DeGennaro offered to appear for a deposition at which Crescent could have very easily questioned him about his possession or control of Innovative documents. *See* ECF #166, Exhibit 40. (Exhibit 14 to Stay Motion). It declined to take DeGennaro's deposition.

28.     The bankruptcy court adopted and embraced the fundamentally erroneous statement of the rules and caselaw governing discovery advanced by Crescent, effectively approving a fishing expedition into all of DeGennaro's personal financial and tax records, and post-bankruptcy employment records for an outrageous period of eight years, holding:

> Given that Crescent started doing business with Innovative in 2012, Crescent must prove that the Debtor's requisite scienter to prevail on its claims the Debtor's past financial records from 2011 are relevant information as they have a tendency to make a fact more or less probable than they would be without evidence, thus discoverable.

See Transcript from hearing held on August 21, 2020, (attached to the Stay Motion as Exhibit 15).

29.     Although the bankruptcy court acknowledged that the attorney's fees awarded in the Sanctions Order #1 were excessive, reducing them by fifty (50%) percent, it also determined to modify the Sanctions Order #1 to provide a much greater sanction as follows:

> ORDERED, that the Amended Order is further modified assessing the fee to Debtor of $250.00 per day for each and every day that Debtor fails to produce all documents as directed therein, payable to Legal Services of the Hudson Valley, 90 Maple Avenue, White Plains, NY 10601 to be capped at 90 days, equaling a sum of $22,500.00, to be paid within 21 days of this Order.

See order dated September 4, 2020 ("Sanctions Order #2) attached as ECF #168.

**Request for a Stay Pending Appeal was Denied by the Bankruptcy Court**

30.     During the August 21, 2020, counsel for DeGennaro moved for a stay of the Sanctions Order #2 to which the court responded "Absolutely not." See Tr., p. 86.

**DeGennaro is Financially Unable to Pay and Will Suffer Irreparable Harm**

31.     As set forth in the Declaration of Charles DeGennaro, he is financially unable to pay the sanction, the failure to do so which could result in a contempt proceeding, and the requirement that he pay such sanction now will likely result in irreparable harm to DeGennaro and his wife Jennifer, who must undergo a very serious brain aneurysm surgical procedure for which the out of pocket expenses are substantial.

## STANDARD OF REVIEW

In *Markus v. Rozhkov*, 615 B.R. 679, 695 (S.D.N.Y. 2020) this Court, in hearing an appeal of a bankruptcy court order that issued discovery sanctions pursuant to Fed.R.Civ.P. 37, held that a "district court reviews a 'Bankruptcy Court's findings of fact for clear error [and] its conclusions of law *de novo.*'" (quoting *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000); *see also In re Corso*, 328 B.R. 375,  (E.D.N.Y. 2005) ("District court review of a Bankruptcy Court determination is governed by Rule 8013 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr."). Under this rule questions of law are reviewed de novo."), *citing In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir.1999); *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir.1998). The United States Department of Justice, which supervises bankruptcy cases, has likewise issued the following advisory opinion concerning the standard of review of bankruptcy court decisions, stating "When a district court or circuit court reviews a decision of a bankruptcy court, it reviews the factual findings for clear error and its legal conclusions de novo. Fed. R. Bankr. P. 8013; *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994); *Matter of Rigdon*, 36 F.3d 1375 (7th Cir. 1994) (proper construction of a bankruptcy statute is a legal issue, subject to de novo review); *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1560 (10th Cir. 1993), *cert. denied*, 114 S. Ct. 1061 (1994); *Matter of Wiredyne*, 3 F.3d 1125, 1126 (7th Cir. 1993); *In re Century Boat Co.*, 986 F.2d 154, 156 (6th Cir. 1993); *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992); *In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir. 1990).  *See* https://www.justice.gov/jm/civil-resource-manual-97-standard-review-mootness-etc

"In reviewing a  decision  of  a bankruptcy court,  the district court 'may  affirm  on  any ground that finds support in the record, and need not limit its review to the bases raised or relied

upon in the decisions below.'" *Markus v. Rozhkov*, 615 B.R. at 695, quoting *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 598 B.R. 102, 111 (S.D.N.Y. 2019) (quoting *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010)). Accordingly, DeGennaro need not show that the bankruptcy court abused its discretion in sanctioning him, but rather, in so ruling, it simply erred.

However, even if this Court were to find that an abuse of discretion standard of review is applicable here, courts in the Second Circuit have held that "a sanctioning court necessarily abuses its discretion when it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *In re Corso*, 328 B.R. at 382, citing, *Williams v. United States*, 215 B.R. 289, 299 (D.R.I.1997) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)); *In re Blaise*, 219 B.R. at 949–50.

## ARGUMENT

### I.

### DEGENNARO WAS DENIED AN OPPORTUNITY TO BE HEARD PRIOR TO BEING SANCTIONED AND THE SAME CONSTITUTES REVERSIBLE ERROR

Fed.R.Civ.P. 37(a)(5) provides:

(5) *Payment of Expenses; Protective Orders.*

(A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Rule 37(a)(5) guarantees a litigant an opportunity to be heard prior to the issuance of a sanction. It is undisputed that DeGennaro was substantially and fundamentally denied an opportunity to be heard prior to being sanctioned by the bankruptcy court. Specifically, when it moved for sanctions under Rule 37 Crescent failed to provide the court with even a copy of DeGennaro's written responses and objections to Crescent's document requests. *See* ECF 100. It was improper for Plaintiff, which was seeking a sanction under Rule 37(a) arising from DeGennaro's objections to the breadth and scope of its document requests, to so deprive the court of an ability to evaluate the propriety of the requests – and most importantly – whether DeGennarro's objections were substantially justified. What was worse however, indeed reversible error, was the bankruptcy's court <u>refusal</u> to consider DeGennaro's timely filed objection ("Objection to Sanctions")" to Crescent's motion for sanctions. *See* ECF 101, including exhibits 1-10 thereto. In the Objection to Sanctions DeGennaro demonstrated that his objections to the document requests were substantially justified, including that (i) he did not have possession, custody or control of documents pertaining to Innovative Electrical Services and (ii) that Crescent wholly failed to meet its burden of a prima facie showing that it was entitled eight years' worth of every imaginable personal financial record notwithstanding the fact that its Lien Law trust diversion claim was limited to transfers from Innovative occurring after February 2017.

It is undisputed that in issuing the first sanctions order in September 2019 the bankruptcy court refused to consider DeGennaro's Objection to Sanctions, and further that it failed to conduct any analysis to the propriety of Crescent's document requests (and whether they were an improper fishing expedition) and whether DeGennaro's objections to the requests were substantially justified. *See* Transcript ("Transcript) from hearing dated August 21, 2020 (Exhibit 15 to the Stay Motion), p. 7.

**A. <u>It Was Reversible Error for the Court to Refuse to Consider DeGennaro's Objection to Sanctions</u>**

As noted in the Statement of Facts, Crescent filed a motion to compel and for sanctions on August 15, 2019, setting Tuesday, August 27, 2019 as the hearing date.[2] *See* ECF# 100. Plaintiff's notice of motion further provided "that pursuant to Southern District of New York Local Bankruptcy Local Rule 9006-1, any papers in opposition to this Motion must be filed with the Bankruptcy Court and served upon all parties no later than **<u>three (3) days in advance of the hearing date</u>**." (emphasis added). Three days prior to the hearing date was Saturday, August 24, 2019.

Fed.R.Civ.P. 6(a)(1)(C) provides:

> (a) COMPUTING TIME. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
>
> (1) *Period Stated in Days or a Longer Unit.* When the period is stated in days or a longer unit of time:
> (A) exclude the day of the event that triggers the period;
>
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
>
> (C) include the last day of the period, ***but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.*** (emphasis added).

Bankruptcy Rule 9006 mirrors Fed.R.Civ.P. 6. Accordingly, the bankruptcy court erred as a matter of law when it refused to consider DeGennaro's Objection to Sanctions, incorrectly concluding that  DeGennaro's objection, in order to be timely, would had to have been filed four (4) days prior to the return date (i.e. Friday August 23, 2019).  *See* Transcript, pp. 7-8. The refusal of the court to consider DeGennaro's Objection to Sanctions, particularly when the motion was

---

[2] Crescent's counsel provided the least amount of time for DeGennaro to respond under the Local Rules, to wit 12 days, notwithstanding its knowledge that DeGennaro's counsel was picking a jury in the Supreme Court of New York for trial that was expected to last 4-6 weeks.

served on such short notice, evidences an undue and particular harshness and lack of fairness toward a litigant whose attorney expended considerable number of hours in preparing the Objection to Sanctions (all the while preparing a major case for trial).

## II.

### THE BANKRUPTCY COURT FAILED TO ANALYZE WHETHER DEGENNARO WAS SUBSTANTIALLY JUSTIFIED IN OBJECTING TO CRESCENT'S DISCOVERY REQUESTS AND THE SAME CONSTITUTES REVERSIBLE ERROR

Even if this Court determines that the bankruptcy court's refusal to consider the Objection to Sanctions does not, in and of itself, warrant reversal, a review of its handling of the substantive discovery issues clearly does.  Prior to sanctioning DeGennaro in the first instance the bankruptcy court was required to conduct an analysis as to whether DeGennaro was substantially justified in objecting to Crescent's document requests. Its failure to do so warrants reversal. This very factual scenario was presented to the United States Court of Appeals for the Third Circuit and that is precisely how it ruled. In *Grider v. Keystone Health Plan Central, Inc*., 580 F.3d 119 (3d. Cir. 2009). In *Grider*, the Third Circuit reversed the district court's imposition of discovery sanctions because of the court's failure to conduct a  "substantial justification" analysis, stating:

> As for the sanctions under 37(c)(1) imposed against the parties here, we conclude that the sanctions cannot stand for the same reasons that we discussed with respect to the sanctions under Rule 26(g). Rule 37(c)(1) is similar to Rule 26(g) in that it expressly includes the "substantial justification" standard; a district court may impose sanctions where "[a] party that without substantial justification fails to disclose information required by" certain enumerated subsections of Rule 26. Fed.R.Civ.P. 37(c)(1) (2000) (emphasis added). ***Because Judge Gardner did not discuss or analyze the "substantial justification" standard in imposing sanctions under Rule 37(c)(1), we will vacate all sanctions under this rule against the corporate Appellants.***

*Grider v. Keystone Health Plan Central, Inc*., 580 F.3d at 141. (emphasis added). There is no

disputing the fact that the bankruptcy court failed to conduct a  "substantial justification" analysis under Rule 37 when issuing the first sanctions order, and that the court's issuance of $22,500 in sanctions in the Amended Sanctions Order was premised on the purported meritoriousness of sanctions set forth in the initial sanctions order.

### III.

### THE PRESENCE OF OTHER CIRCUMSTANCES MAKE THE IMPOSITION OF SANCTIONS UNJUST

In addition to the requirement that a trial court conduct an analysis as to whether the non-moving party was substantially justified in his objections, Rule 37(a)(5)(A), requires that any such sanction be "just" (or not be unjust). There is no question that an award of $22,500 in sanctions to DeGennaro, who is a Chapter 7 bankrupt debtor, is patently and fundamentally unjust.  There is simply no evidence of willfulness or contumaciousness that would support a sanction. Rather, just the opposite. DeGennaro asserted his right to object to document requests that he maintained were palpably improper or sought documents that he did not possess or control. He timely objected to Crescent's motion to compel and for sanctions. When the court issued the Sanctions Order #1, he promptly filed a motion for reconsideration and a motion for a stay pending reconsideration. Notwithstanding the pendency of those motions, which if successful would have relieved him from the enormously burdensome production, DeGennaro, in good faith, produced to Crescent over 700 pages of documents concerning his personal financial, banking and tax affairs. *See* ECF #166 (exhibits 11-32 to the Joint Pre-trial Order). In addition, it is undisputed that DeGennaro undertook extraordinary efforts to obtain documents and records from third parties (including his former partner Anthony Bartolomeo and others with whom Bartolomeo was affiliated)  by way of subpoena and Bankruptcy Rule 2004, only to be thwarted by vigorous opposition from those parties. *See* ECF #166, exhibits 5, 6, 11, 33, and 34. Those efforts by DeGennaro undeniably

establish that  he was doing everything within his legal power to obtain documents that would vindicate him from any and all allegations of wrongdoing (including to defend against the claims brought by Crescent).  They further provide probative evidence of the fact that when he informed the bankruptcy court in numerous pleadings as well as through his counsel that he did not have possession of or access to Innovative books and records, he was being truthful.

**A. <u>Crescent's Receipt of Substantially All of Innovative's Financial, Accounting, Tax and Banking Records from Provident Bank in September 2019, and Its Failure to So Inform the Court, Renders the $22,500 Sanction Unjust</u>**

It goes without saying that there is a strong public policy in favor of resolving disputes on their merits. The sanctions available under Rule 37 are intended to level the playing field caused by a party who willfully and contumaciously refuses to produce documents or information that are relevant to the claims and defenses in the action. The objective of the Federal Rules is mutual disclosure so that the overarching policy – adjudication of the merits – can also be achieved. Pursuant to a subpoena it served upon Innovative's bank and lender, Provident Bank, on August 7, 2019, Crescent obtained substantially all of Innovative's financial, banking and tax records, including:

> Financial statements prepared by Innovative's accountants for the years 2011 through June 30, 2017, including Balance Sheets, Income Statements, Cash Flow Statements, Statements of Selling General and Administrative Expenses, Schedule of Contracts, Schedule of Gross Profits, Job Estimates v. Actual Summary, Account Payable Aging Summaries, Invoice Aging By Job Statements, Aged Accounts Receivables Reports, Profit and Loss Statements, Statements of Assets Liabilities and Equity, Brokerage Account Statements of DeGennaro personally, Personal Tax Returns of Charles and Jennifer DeGennaro for the years 2010-2015, Innovative Tax Returns for the years 2010-2014.

*See* ECF #166 (exhibits 8,9, and 10, also attached as Exhibit 10,11 and 12 to the Stay Motion)

Provident subsequently produced to Crescent 437 pages of Innovative Checking/Operating Bank

Statements (including canceled checks) for the period January 20, 2017 to December 29, 2017.[3] DeGennaro submits that Crescent violated its ethical duty to inform the bankruptcy court that it had secured the very information from Provident that it was seeking to have DeGennaro sanctioned for, particularly in light of DeGennaro's pleadings stating that he did not have possession or control of Innovative documents. Had Crescent done so, it would have mooted one of the two main objections to its sanctions motion, which in turn would have mitigated any alleged damages related to the discovery dispute.

All of the foregoing "other circumstances" make the imposition of $22,500 in sanctions against DeGennaro grossly unjust.

## IV.

### INSOFAR AS THE SANCTIONS ORDER WAS PREMISED ON A FUNDAMENTALLY FLAWED AND ERRONEOUS APPLICATION OF RULES 26 AND 37 IT MUST BE SET ASIDE

**A. The Bankruptcy Court Impermissibly Permitted Plaintiff To Engage In A Fishing Expedition Based on Pure Conjecture and Speculation**

Pursuant to Federal Rule of Civil Procedure 26(b)(1),"[p]arties may obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1). Relevance under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."

---

[3] All of the aforementioned documents produced by Provident to Crescent were submitted to the bankruptcy court and made a part of the record at the evidentiary hearing conducted by the court on August 21, 2020. See Tr., pp. 76-77.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all the evidence relevant to the merits of a controversy").

Although the scope of discovery is broad, it is not unrestricted. Federal Rule of Civil Procedure 26(b)(2)(C) requires a district court to limit or deny discovery, *sua sponte* or upon motion, when: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action,; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C). "The party seeking the discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92–CV–8430, 1994 U.S. Dist. LEXIS 6187, at *1, 1994 WL 185696 (S.D.N.Y. May 11, 1994); *see also United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) (the burden is on the moving party to establish relevance); *Samuels v. Eleonora Beheer, B.V.,* 500 F.Supp. 1357, 1362 (S.D.N.Y.1980), *aff'd,* 661 F.2d 907 (2d Cir.1981) (discovery rules "are not a hunting license to conjure up a claim" that has not been alleged properly…" and "where a party is unable to specifically allege a cause of action, that party may not seek to substantiate its claim through overly broad discovery.");

The case of *Tottenham v. Trans World Gaming Corp*., 2002 WL 1967023 (S.D.N.Y. 2002) is directly on point and instructive. In *Tottenham* the plaintiff, a CEO, sued his employer

for wrongful termination, and the defendant corporation counterclaimed for conversion and breach of fiduciary duty. The defendant, as Crescent did here, then served an overbroad set of documents requests seeking discovery of all of the CEO's financial records for four and a half years, as follows:

> (a) "[a]ll documents concerning any expense or obligation paid by or on behalf of Tottenham or Tottenham's wife from January 1, 1996 up to and including June 16, 2000, including documents sufficient to show the source of funds used to pay such expenses or obligations;" and
> (b) "[a]ll documents concerning Tottenham's finances from January 1, 1996 up to and including June 16, 2000, including tax returns for tax years 1996 through 2000, inclusive, financial statements, checkbooks, bankbooks, bank statements, and investment account statements."

*Tottenham*, 2002 WL 1967023, *1.  The defendant corporation argued that "if Tottenham used company money to pay for his personal insurance needs, ***he may well have used company money to pay other personal expenses***." *Id.* (emphasis added).  This Court refused to countenance such an abuse of discovery stating:

> Discovery requests cannot be based on pure speculation or conjecture. (citing *Surles v. Air France*. 2001 WL 815522, *4 (S.D.N.Y. 2001)…
>
> the Defendant's document requests constitute no more than a fishing expedition to discover additional instances of wrongdoing beyond those already alleged in the Answer. We will not condone such a fishing expedition on the mere speculation that the Plaintiff "may well have used company money to pay other personal expenses," see Goldberg Letter at 2, where the Defendant has not offered any objective support for that contention.

Id. at *2, citing *United States v. Consolidated Edison Co. of New York,* 1988 WL 138275, *1–*2 (E.D.N.Y. 1988) (denying motion to compel where the requested discovery constituted no more than a fishing expedition by the plaintiff to discover additional violations beyond those alleged in the complaint).

The court impermissibly allowed Crescent to embark on a fishing expedition to "discover additional instances of wrongdoing beyond those already alleged" in the complaint. To put it

simply, insofar as Plaintiff's lien law trust diversion claim is based narrowly and exclusively on demonstrating that the very funds that Innovative received on jobs for which Crescent only first delivered and supplied materials in 2017, no personal financial records of DeGennaro that preceded the supply of those materials could ever be relevant. It was impossible for DeGennaro to divert funds from Innovative (from 2011 to 2016) that were yet to even come into possession of Innovative because they were not even supplied until February through September 2017.

**B.  The Bankruptcy Court Misapprehended and Misapplied Rule 37 In Sanctioning DeGennaro $22,500 While DeGennaro's Emergent Motion for a Stay of the Sanctions Order #1 Remained Outstanding and Undecided.**

In addition to the improper endorsement of a fishing expedition, the bankruptcy court further erred in imposing an arbitrary and capricious sanction of $22,500. The court utterly overlooked and ignored the fact for the very 90 days that it sanctioned DeGennaro $250/day there was an unresolved and timely filed motion to stay the enforcement of the Sanctions Order #1 pending the determination of the motion for reconsideration. Whereas the bankruptcy court heard Plaintiff's motion for sanctions on the shortest amount of time possible, to wit, 12 days, and issued an order a mere three weeks later, the bankruptcy court failed to rule on the motion for a stay until June 2020, and on the motion for reconsideration until September 2020. By sanctioning DeGennaro for purportedly disobeying the Sanctions Order #1 all the while it failed to adjudicate the motion to stay, which if timely handled could have been appealed, the bankruptcy court has fundamentally denied DeGennaro due process of law under the United States and New York Constitution. DeGennaro ought not be punished for simply exercising his Constitutional rights and for availing himself of rights and recourses afforded under the Federal Rules of Civil Procedure.

**C.  The Bankruptcy Court Further Impermissibly Permitted the Discovery of Tax Returns**

"Although tax returns are not privileged documents, Court[s] are reluctant to order their discovery in part because of the private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns." *Chen v. Republic Rest. Corp.,* No. 07 Civ. 3307, 2008 U.S. Dist. LEXIS 24000, at *4, 2008 WL 793686 (S.D.N.Y. Mar. 26, 2008) (citing *Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y.1979)). In order to reconcile privacy concerns with liberal pretrial discovery, tax returns typically are subject to compelled production in civil cases only upon a two-part showing: "(1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not 'otherwise readily obtainable." *Carmody v. Vill. of Rockville Centre,* No. 05–CV–4907, 2007 U.S. Dist. LEXIS 50933, at *2, 2007 WL 2042807 (E.D.N.Y. July 13, 2007) (quoting *United States v. Bonanno Family of La Cosa Nostra,* 119 F.R.D. 625, 627 (E.D.N.Y.1988)); *accord Ellis v. City of New York,* 243 F.R.D. 109, 111–12 (S.D.N.Y.2007) ("The standard for order compelling disclosure [of tax returns] is two-part; the moving party must demonstrate that 1) the returns are relevant to the subject matter of the action and 2) a compelling need for the information.").

Aside from the fact that DeGennaro's tax returns for 2011-2016 have absolutely no relevance to Crescent's Lien Law claims, the bankruptcy court further failed to engage in any analysis as to whether there was a compelling need to DeGennaro's tax returns because other information was not otherwise readily obtainable. In fact other information was not only available, but had in fact been provided to Crescent by Provident Bank, albeit Crescent failed to inform the court of same. DeGennaro submits that Crescent violated its ethical duty to inform the court that it had secured the very information from Provident that it was seeking to have

DeGennaro sanctioned for, particularly in light of DeGennaro's pleadings stating that he did not have possession or control of Innovative documents.

**V.**

**IF THE COURT DETERMINES THAT THE BANKRUPTCY COURT DID NOT COMMIT REVERSIBLE ERROR IN ISSUING $22,500 IN SANCTIONS THE INTERESTS OF JUSTICE MILITATE IN FAVOR OF THE EXERCISE OF THIS COURT'S INHERENT POWERS TO SET ASIDE THE SANCTIONS ORDER #2**

Just as "district courts 'have inherent power to enforce compliance with their lawful order through civil contempt,'" see *Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966), they also have the inherent power to prevent manifest injustice. DeGennaro incorporates herein Argument Point III from his Stay Motion, together with the his declaration dated September 25, 2020 submitted in support thereof, which taken together with the facts and record established herein, warrant the Court's use of its inherent powers to set aside an arbitrary and capricious sanctions order and otherwise prevent manifest injustice.

**<u>CONCLUSION</u>**

For all of the foregoing reasons Defendant respectfully requests that the Court reverse and vacate that part of the Sanctions Order #2 that imposed sanctions in the amount of $22,500.

Dated: New York, New York
        October 16, 2020

RUTA SOULIOS & STRATIS LLP

By: /s/ Steven A. Soulios
Steven A. Soulios, Partner
211 East 43rd Street

New York, New York 10017
212-997-4500
*Attorneys for Charles DeGennaro III*