**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____x

In re: CHARLES DeGENNARO, III,

                      Debtor,                            No. 20 Civ. 7958 (CM)

_____x

CRESCENT ELECTRIC SUPPLY COMPANY, INC.
OF NEW YORK,

        Plaintiff-Appellee,

    -against-

CHARLES DeGENNARO, III,

        Defendant-Appellant.

_____x

## DECISION AND ORDER

McMahon, C.J.:

      Defendant-Appellant Charles DeGennaro appeals from an order of the Bankruptcy Court (Morris, Chief Bankruptcy Judge), dated September 4, 2020, which refused to vacate so much of a prior amended order, issued on September 19, 2019, as had imposed sanctions on DeGennaro for failing to comply with certain discovery requests. DeGennaro had asked the Bankruptcy Court to reconsider its ruling after the sanctions were originally imposed.

      For the following reasons, the sanctions imposed by the Bankruptcy Court are vacated.

## I.     BACKGROUND

### A.  Underlying Bankruptcy

Charles DeGennaro III filed a voluntary petition for Chapter 7 bankruptcy relief on February 9, 2018. (Case No. 18-09032, Bankr. S.D.N.Y., Dkt. No. 1 at ¶ 18). On October 17, 2018, Plaintiff-Appellee Crescent Electric Supply Company ("Crescent") commenced an adversary case against DeGennaro in the U.S. Bankruptcy Court for the Southern District of New York, alleging that under 11 U.S.C. § 523(a), DeGennaro was precluded from discharging any debt that he owes to Crescent because he had violated provisions of the New York State Lien Law. (*Id*. at ¶¶ 56–73).

Crescent claims that, beginning in 2012, it provided materials and supplies to Innovative Electrical Services, LLC ("Innovative"), for which DeGennaro was the majority owner, and served as a principal and officer. From 2016 through 2017, Crescent "sold and delivered certain electrical supplies and related materials . . . to Innovative for use in connection with various construction project [sic] throughout New York," but Innovative "failed to pay Crescent" for the materials, which were worth approximately $118,000. (*Id*. at ¶¶ 9, 17, 21). Under the New York Lien Law, funds received by a contractor for certain construction projects ("Lien Law trust funds") can only be used to pay off certain debts. *See* N.Y. Lien Law § 71. Crescent claims that Innovative and DeGennaro improperly used Lien Law trust funds for purposes other than the ones permitted, and that this violation precludes DeGennaro from discharging any debt that he or Innovative owes to Crescent. (*E.g., id*. at ¶ 36–38).

### B.  Origins of the Discovery Dispute and First Hearing

The present appeal arises out of sanctions that the Bankruptcy Court imposed on DeGennaro for failing to comply with a discovery order.

On April 29, 2019, Crescent served DeGennaro with fifty-three specific requests for documents pursuant to Fed. R. Civ. P. 34. Among these were requests for financial records for a period spanning from 2011 through 2018, including the "accounts receivable records," "balance sheets," and "bank statements" of Innovative and DeGennaro, as well as DeGennaro's personal tax returns. (Dkt. No. 100, Exh. 2, pg. 2).

Despite Crescent's following up with DeGennaro several times, DeGennaro did not respond to the request within the 30-day period provided in Rule 34(b). So on July 18, 2019, Crescent sought a hearing with the Bankruptcy Court to resolve the dispute. (Dkt. No. 95).

The record shows that the Bankruptcy Court (Morris, Chief Bankruptcy J.) held the requested hearing on July 30, 2019. Unfortunately, there is no transcript of this hearing, so this Court does not have a record of what took place or what was said. However, based on this court's review of on-the-record hearings and court filings, it appears undisputed that the following occurred at the July 30 hearing: (1) the Bankruptcy Court directed DeGennaro to comply with Crescent's discovery requests within seven days; (2) DeGennaro's attorney stated that he would be able to comply with the order within that time frame; and (3) Judge Morris informed Crescent that, if DeGennaro did not produce the documents within seven days, Crescent should file a motion to compel discovery and for attorney's fees or sanctions. (Dkt. No. 128 at pgs. 14, 16).

## C. <u>Second Hearing and First Sanctions Order</u>

His attorney's representation notwithstanding, DeGennaro did not produce any documents after the July 30 hearing. On August 15, Crescent filed a motion to compel discovery and for sanctions and attorney's fees against DeGennaro. (Dkt. No. 100). The Bankruptcy Court set a hearing date of August 27 to consider the motion.

DeGennaro filed his opposition papers the day before the hearing. (Dkt. No. 101). Among these was a "Responses and Objections" document that he claimed to have sent to Crescent's attorney's on July 18 – well over a month late, and on the very day the request for the first hearing was filed – outlining his position with respect to the discovery requests. In this document, DeGennaro stated that (1) he could not produce documents belonging to Innovative because he had neither possession nor control over those documents, and (2) he would not produce documents about his personal finances, because they were irrelevant to the adjudication of Crescent's claim. (Dkt. No. 101, Exh. 5). Because there is no transcript of the July 30 hearing, this Court has no way of knowing whether Judge Morris ever saw this document before the initial hearing, or whether these particular objections were discussed and ruled upon at the hearing. In view of what occurred on August 27, it seems unlikely.

The hearing on August 27 was on the record. (Dkt. No. 128). It began with a discussion over whether DeGennaro's opposition papers – filed the day before the hearing – were late under the Bankruptcy Court's local rules. (*Id*. at pg. 7).[1] Nonetheless, Judge Morris permitted DeGennaro to argue against Crescent's motion to compel. His attorney made exactly the same points that were made in the July 18 letter: that DeGennaro did not have access to any documents related to Innovative, and that Crescent's request for personal records was an improper "fishing expedition" because the records were irrelevant to Crescent's adversary claim. (*Id*. at 8).

DeGennaro's attorney further explained that his client's former business partner at Innovative, Anthony Bartolomeo, had *de facto* control of the company, and had actually created a

---

[1] The opposition papers were due, under the rules, three days before the hearing. That day happened to fall on a Saturday. Normally, a filing due on a day when the court is closed (Saturday, Sunday, holiday) must be made on the following Monday. *See* Fed. R. Bankr. P. 9006(a)(1)(C). Judge Morris appears to have taken the position – over DeGennaro's objections – that DeGennaro should have filed his opposition papers on the Friday before the hearing. (Dkt. No. 128, pg. 7).

successor company, RX Electric, after DeGennaro left Innovative. (*Id.* at 7-8). The attorney further

noted that, in September 2017, Bartolomeo had physically removed DeGennaro from Innovative's

premises and had "cut him off from all access to Innovative's electronic records" – including bank

statements, ledgers, etc. Moreover, Bartolomeo had filed his own bankruptcy proceeding on July

16, 2019, and DeGennaro had filed applications in that proceeding for Rule 2004 examinations of

RX Electric and Bartolomeo's records. (Dkt. No. 101, pg. 6). Those applications were attached to

DeGennaro's opposition papers. (*Id.* at Exhs. 3, 4). The record in this case does not reveal whether

the judge supervising Bartolomeo's bankruptcy had ruled on DeGennaro's application by the date

of the hearing before Judge Morris, but it does show that DeGennaro made an effort to obtain

access to documents held by Bartolomeo.

In her discussion of the issues presented by the parties, Judge Morris determined that

DeGennaro's personal financial records from "2015 forward" were "totally relevant" and had to

be produced. (*Id.* at 8–9). Judge Morris further concluded that any information obtainable from

Innovative's records should be obtainable from DeGennaro's own personal records, though she

did not explain why this was so. (*Id*. at pg. 12).   Judge Morris gave short shrift to counsel's

statements about DeGennaro's lack of control over Innovative and did not appear to credit his

efforts to obtain Innovative's documents through Bartolomeo's bankruptcy.  (Dkt. No. 128, pg. 8).

Judge Morris expressed her displeasure about the fact that DeGennaro's lawyer had

advised her, at the July 30 hearing, that DeGennaro would comply with all of Crescent's document

requests within seven days but had not done so. She noted that if DeGennaro had a problem with

her order directing him to produce the documents within seven days, he "needed to file [a] motion

to quash immediately." (*Id*. at pg. 13). But he had chosen to ignore the court's order instead –

always an unwise decision. Judge Morris noted that she had told DeGennaro at the previous

hearing that "if [he] fail[ed] to comply, I would encourage Crescent to bring a motion for sanction," which is precisely what Crescent had done. (*Id*. at pg. 14).

In the end, Judge Morris granted the motion to compel, awarded Crescent attorney's fees, and concluded that it would be appropriate to sanction DeGennaro under Bankr. R. 7037 and Rule 37(b)(1).  When DeGennaro's attorney asked for clarification on which documents needed to be produced – a perfectly reasonable request in light of her earlier comments about the relevance of documents from "2015 forward" – Judge Morris replied, "Give them all. Give them all the tax returns, give them the bank statements, give them everything they ask." (*Id*. at pg. 15).

After the hearing, the Bankruptcy Court entered a written order (dated September 18, 2019 but entered on the docket on September 19) (1) granting Crescent's motion to compel discovery; (2) providing that DeGennaro "shall immediately produce all documents responsive to Crescent's Requests . . . dated April 29, 2019 . . . that Debtor has in his possession, custody or control, or to indicate that no such documents exist, in formal responses"; (3) awarding Crescent $5,685.43 in attorney's fees associated with its motion to compel; and (4) sanctioning DeGennaro – nunc pro tunc to August 28 – $250 "per day for each and every day that [he] fails to produce all documents as directed." (Dkt. No. 107, pg. 2).

### D.  <u>Motion for Re-argument/Reconsideration and Non-Noticed Appeal</u>

On October 3, 2019, DeGennaro filed a motion pursuant to Local Bankruptcy Rule 9023-1 and Federal Rule of Civil Procedure 59. Although the motion was styled as one for "re-argument," the memorandum of law in support argued for "reconsideration" pursuant to Federal Rules of Civil Procedure 54(b), 59, and 60. (Dkt. No. 108).

On October 4, 2019, DeGennaro filed a notice of appeal to the district court from the September 19 order.  He also moved for a stay of the proceedings before the Bankruptcy Court pending appeal. (Dkt. No. 112).

Judge Morris eventually denied DeGennaro's motion for a stay pending appeal, but not until June 2, 2020. (*See* ECF entry between Dkt. Nos. 153, 154). She did not decide DeGennaro's motion for reconsideration at that time.

Between December 2019 and March 2020, DeGennaro sought five extensions of time to file his appellate brief with the district court. (*See* Dkt. No. 161). In his first three requests, DeGennaro noted that there was a pending motion for reconsideration before the Bankruptcy Court that might moot the appeal if it were decided in his favor. (Case No. 7:19-cv-10261, S.D.N.Y., Dkt. Nos. 7, 9, 11). The district court (Seibel, J.) granted these extensions without comment.

Even though Judge Morris had still not decided the motion for reconsideration, DeGennaro dropped that argument when he made his fourth request for an extension. Instead, he asked for an extension because the parties had begun settlement negotiations. Judge Seibel granted this request as well. But she noted that it would be the last extension. (Dkt. No. 12).

Despite this warning, DeGennaro filed a fifth request for an extension of time to perfect his appeal, again noting that the parties were negotiating settlement while not mentioning the fact that the motion for reconsideration was still pending (Dkt. No. 13). Judge Seibel denied this last request and directed that DeGennaro file his appellate brief "immediately." (Dkt. No. 14). He did not do so.

The case was subsequently transferred to Judge Halpern. On June 26, 2020, Judge Halpern asked DeGennaro to show cause as to why his appeal should not be dismissed for want of

prosecution. DeGennaro never responded to this order to show cause, and on July 29, 2020, Judge Halpern dismissed DeGennaro's appeal. (Dkt. No. 161).

However, unbeknownst to Judge Halpern – because no party had called it to the Court's attention – the appeal was not ripe for perfection and so should not have been dismissed for failure to prosecute.  Federal Rule of Bankruptcy Procedure 8002(b)(2) provides that, if a party files a notice of appeal from a decision of the Bankruptcy Court before the court "disposes of any motion listed in [Rule 8002](b)(1)" then the original notice of appeal "becomes effective [to appeal from the judgment or order][2] when the order disposing of the last such remaining motion is entered." The list of motions that suspends the operation of a notice of appeal from a Bankruptcy Court order includes, predictably, a motion to alter/amend the judgment or for relief from judgment under bankruptcy rules 9023 and 9024, respectively. DeGennaro's motion for "reconsideration," which he filed pursuant to those two rules, had not yet been decided by Judge Morris when his appeal was dismissed for failure to prosecute. Per the Bankruptcy Rules, the effectiveness of the original notice of appeal was suspended throughout the time his case was pending before both Judges Seibel and Halpern.  What this means is that, when Judge Halpern dismissed the appeal for seeming failure to prosecute, there was in fact no perfectable appeal yet on file. *See Brewer v. Nash*, 5 F. App'x 89, 90 (2d Cir. 2001). The proper thing to have done was to remand the case to the Bankruptcy Court with directions to decide the long-pending motion for reconsideration.

### E.  Third Hearing and Reconsideration Order

Judge Morris ultimately scheduled a hearing for August 21, 2020 to decide any remaining issues in the case.

---

[2] See Fed. R. App. P. 4(a)(4)(B)(i), from which the Rule of Bankruptcy Procedure derives.

Judge Morris was under the impression that she had already denied DeGennaro's motion for reconsideration. (Case No. 7:20-cv-7958, S.D.N.Y., Dkt. No. 3, Exh. 17, pg. 4). But when the parties explained that she had not, she undertook to resolve it that very day.

Judge Morris began by going through each of Crescent's discovery requests and asking Crescent's counsel (1) whether the responsive documents had been produced and, if not, (2) whether DeGennaro had served an affidavit explaining the reason why they had not been produced. (*Id*. at pgs. 18–68).

Crescent's counsel stated that – for many of its requests – Crescent had not received either documents responsive to any other request or any affidavit from DeGennaro explaining his non-production.

DeGennaro's lawyer responded by making the same unsuccessful arguments that he had made previously: he insisted that his client was unable to obtain Innovative's documents and that DeGennaro's personal records were irrelevant. But counsel also revealed that he had produced at least some of the documents that Crescent had requested, and had gone to some lengths to obtain them. For example, DeGennaro produced his personal tax return for 2017, as well as Innovative's tax return for 2016 (its most recent one before closing) – which, he said, DeGennaro had obtained in a separate adversary proceeding involving Innovative's primary lender, Provident Bank. (*Id*. at pgs. 65, 77) DeGennaro also provided some of his personal bank statements and credit card statements from 2016 to 2017. (*Id*. at pgs. 76-78).

Judge Morris made the following findings:

First, she concluded that DeGennaro's personal financial records were indeed relevant to the resolution of the adversary proceeding. In order to succeed on its Lien Law claim, Crescent needed to prove DeGennaro diverted Lien law funds with the requisite scienter; DeGennaro's

personal financial records were potentially probative on that issue. (*Id*. at pg. 80). Although Judge Morris acknowledged that DeGennaro had produced some of his personal financial records, he had still not produced *all* of the documents that Crescent requested – specifically, he had only produced his financial records for a limited period of time, not the eight-year span that Crescent requested. (*Id*. at 76-79).

Second, Judge Morris concluded that DeGennaro had not sufficiently proved his lack of control over the records of Innovative, because he had not submitted an affidavit or other evidence tending to show that he, the majority shareholder of Innovative, had no ability to access the corporation's records. (*Id*. at pg. 81).[3] She made this finding despite evidence in the record tending to show that DeGennaro had been able to produce *some* of Innovative's documents – even though they had to be obtained from third parties. In fact, Judge Morris appeared to find it a negative factor that DeGennaro had obtained documents by subpoenaing them from Provident, rather than getting them directly from Innovative. (*Id*. at 79).

In short, she concluded that although DeGennaro complied with some of Crescent's requests, he still failed to comply with *all* of its requests. For that reason, Judge Morris denied DeGennaro's motion for reconsideration of the order insofar as it compelled him to provide the requested discovery.

Judge Morris, however, did modify amend her original order imposing sanctions. DeGennaro did not press for reconsideration of the award of attorney's fees against him, but

---

[3] In his answer to the complaint, DeGennaro alleged that his business partner and co-owner had locked him out of the corporation and denied him access to the corporate records. (Case No. 18-09032, Bankr. S.D.N.Y., Dkt. No. 4, pg. 11).  DeGennaro filed a counterclaim against his business partner before Judge Morris, but she dismissed the claims at a hearing (without a written order) on March 5, 2019, holding that DeGennaro lacked standing to pursue the counterclaim. (Dkt. No. 117).

questioned the amount, and Judge Morris reduced the award to $2,842.70 after noting that the previous order had incorrectly billed for attorney travel at a higher rate than permitted. (*Id*. at pg. 72). She also capped the $250 per day sanction at ninety total days, noting that this sanction had been in a nature of a contempt sanction designed "to coerce a responding party for compliance with discovery" and was not intended to be imposed "for mere penalties." (*Id*. at 83). Ninety days of sanctions totaled $22,500.  DeGennaro was directed to make that amount payable to the Legal Services of the Hudson Valley.

Judge Morris ordered DeGennaro to pay the fees and sanctions within fourteen days.

The Bankruptcy Court memorialized the ruling in an order dated September 4, 2020, granting in part and denying in part DeGennaro's motion for reconsideration (the "Reconsideration Order"). (Case No. 18-09032, Bankr. S.D.N.Y., Dkt. No. 168).

On September 25, 2020, DeGennaro filed a notice of appeal from "each and every part" of the Reconsideration Order that "adversely affect[ed] him." (Case No. 7:20-cv-7958, S.D.N.Y., Dkt. No. 1). He also moved for an emergency stay of so much of the Reconsideration Order as affirmed the sanctions, arguing that the court erred in refusing to vacate them. This Court granted the stay. (Dkt. No. 9).

Despite the breadth of the notice of appeal, the only issue discussed by the parties in their briefs on appeal is the issue of the propriety of the remaining $22,500 in sanctions. (Dkt. No. 14). Therefore, any appeal from so much of Judge Morris' order as, on reconsideration, compelled the production of the requested documents is deemed abandoned. *See In re Westinghouse Elec. Co., LLC*, 794 F. App'x 136, 138 (2d Cir. 2020) (summary order).

## II.    DISCUSSION

### A.  Standard of Review

DeGennaro insists that this Court must review the Reconsideration Order *de novo*. He is wrong.

Denials of motions for reconsideration are reviewed for an abuse of discretion. This is true regardless of whether the lower court decided the motion pursuant to Rule 59 or Rule 60. *See Matter of AMR Corp.*, 566 B.R. 657, 665 (S.D.N.Y. 2017).

Moreover, "A bankruptcy court's award of sanctions will not be set aside . . . in the absence of an abuse of discretion." *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010).  So even if this were a direct appeal from the original order imposing sanctions, rather than an appeal from an order modifying those sanctions on reconsideration, the abuse of discretion standard would apply.

A bankruptcy court abuses its discretion only "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Ibid.* (quoting *In re Highgate Equities, Ltd.*, 279 F.3d 148, 152 (2d. Cir. 2002)).

### B.  Legal Framework

Bankruptcy courts have several bases of authority to impose sanctions. *See Markus v. Rozhkov*, 615 B.R. 679, 707 (S.D.N.Y. 2020). However, a "Bankruptcy Court's discretion to award sanctions may be exercised only on the basis of the specific authority invoked by that court." *In re Kalikow*, 602 F.3d at 96. This is because the various statutes and provisions permitting sanctions are "governed by differing standards," making it "imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power." *Ibid.* (quoting *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997)).

In this case, the Bankruptcy Court invoked Rule 37 when entering the original sanctions order on September 19, 2019. (Dkt. No. 107, pg. 2). Rule 37 authorizes courts to sanction a party for "failure to comply with a court order." Fed. R. Civ. P. 37(b). The order appealed from is a modification of that original sanctions order, so Rule 37 is plainly the authority on which the Bankruptcy Court – specifically, Rule 37(b)(2)(A), which provides as follows:

(A) *For Not Obeying a Discovery Order.*

If a party……fails to obey an order to provide or permit discovery……the court where the action is pending may issue further just orders. They may include the following:

(i)  Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action;

(ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)  striking pleadings in whole or in part;

(iv)  staying further proceedings until the order is obeyed;

(v)  dismissing the action or proceeding in whole or in part;

(vi)  rendering a default judgment against the disobedient party; or

(vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical exam.

Rule 37(b)(2)(C) further provides:

Instead of or in addition to the orders above, the court must order the disobedient party, the attorney representing that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

As noted above, DeGennaro has not pursued his appeal from Judge Morris's finding (on two occasions, in August 2019 and again in August 2020) that his failure to produce the requested documents was an unjustified violation of her order. Nor has he argued that the award of attorneys'

fees was unjust. So the only question is whether the Bankruptcy Court abused its discretion by refusing to vacate the order directing the payment of a sanction of $250 per day for each day of non-production, and instead modifying that order so that sanctions ended after 90 days of noncompliance.[4]

The list of possible sanctions in Rule 37(b)(2)(A) are "not exhaustive, and the Court may impose such sanctions as are just." *Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D. 191, 194 (S.D.N.Y. 1995). This is because a court "may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even," 8B Wright, Miller & Marcus, Federal Practice & Procedure § 2284 (3d ed.) (2020), a conclusion that follows naturally from the text of Rule 37 itself. Rule 37 plainly grants a court the authority to "issue further just orders" to rectify a party's failure to comply with discovery, and the language of the rule that precedes the list of possible sanctions is permissive ("further orders . . . . *may include*") rather than mandatory. (A Bankruptcy Court also has inherent authority to sanction, *see In re Sanchez*, 941 F.3d 625, 627 (2d Cir. 2019), but Judge Morris did not rely on that inherent power in imposing the sanction under review).

At the time she originally imposed the sanction, the Bankruptcy Judge did not specify on which subsection of Rule 37 she was relying. But at the reconsideration hearing, the learned Bankruptcy Judge specifically noted that she had originally "held" DeGennaro "in contempt" for not complying with the discovery order, as well as by her justification for the modification of the original sanction – not to punish, but to compel production of the documents by imposing a fine that increases day by day, which is the hallmark of a civil contempt. (Case No. 7:20-cv-7058,

---

[4] That the original sanctions order – a $250 a day fine with no limit – was an abuse of discretion appears to have been conceded *sub silentio* by the Bankruptcy Court when she modified it.

S.D.N.Y., Dkt. No. 3, Exh. 17, pgs. 12, 83). I will, therefore, proceed on the assumption that Judge Morris rested her sanction on Rule 37(b)(2)(A)(vii).

The ability to hold a non-complying party in contempt – be that pursuant to a court's Rule 37 authority or its inherent authority – serves "'dual purposes': securing 'future compliance with court orders' and 'compensa[ting] the party that has been wronged.'" *South. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 146 (2d Cir. 2010) (quoting *Paramedics Electromedicina Comercial, Limitada v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004)). "Statutory contempt powers given to a bankruptcy court . . . complement the inherent powers of a federal court to enforce its own orders," *In re Kalikow*, 602 F.3d at 96. A court's contempt authority is a derived simply from its position as a judicial entity, and is a power "necessary to the exercise of all others." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). In short, it is a power that "a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

Nevertheless, a court's power to hold a party in contempt for failing to comply with a court order is not unlimited. A contempt order is valid only when "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Markus*, 615 B.R. at 710 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). All three factors need to be met in order for the contempt holding to be valid.

A separate standard is generally used to assess whether any sanction imposed under Rule 37 (including, arguably, a contempt sanction) was an abuse of discretion. Considerations include: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy

of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non–compliant party had been warned of the consequences of noncompliance." *Markus*, 615 B.R. at 710.  None of these factors is dispositive, nor are they exhaustive of all possible considerations. *South. New England Tel. Co.*, 624 F.3d at 144.

The standard for evaluating the very specific situation here, in which the contempt sanctions were imposed under Rule 37(b)(2)(A)(vii), has not been explicitly contemplated by the Second Circuit. Neither do the litigants identify which set of factors this Court should review the sanctions under – those governing general contempts, or those more specific to sanctions under Rule 37.

That said, I note that the Bankruptcy Court did not consider *any* of these factors on the record before originally imposing sanctions, nor did it discuss *any* of these factors when it decided DeGennaro's motion for reconsideration. This renders review of the court's decision more difficult. The absence of any substantive discussion for why the specific sanctions imposed were appropriate implicates a possible abuse of discretion. *Cf. Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007). The unusual procedural posture – the Court is reviewing an order modifying a sanction that was originally imposed some time ago, after the appeal from the underlying order was erroneously dismissed – also makes review more difficult than it would have been had the motion for reconsideration/relief from the judgment been timely decided.

I conclude that the best way to proceed is to determine whether the original sanctions order was an abuse of discretion, and then, if it was, whether the subsequent modification cured the original taint.

### C. **The Original Contempt Sanction Was an Abuse of Discretion**

Regardless of what standard was applied, the Bankruptcy Court's original contempt sanction was an abuse of discretion.

Under the general standard applicable to contempts, the order was deficient in several respects.

*(i)     The General Standard Applicable to Contempts*

Applying the standard for assessing contempts generally, Judge Morris' original sanctions order was an abuse of discretion.

First, the order which DeGennaro was sanctioned for not complying with was not "clear and unambiguous," as the law requires. "A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed.'" *King*, 65 F.3d at 1058. The Bankruptcy Court's initial directive to produce came at an off-the-record hearing conducted on July 30, 2019. This Court has no indication of what was said at that hearing, or whether the direction that the judge gave about discovery was sufficiently clear. It is therefore impossible to conclude that the failure to produce documents following the first hearing was sanctionable, because it is not possible to ascertain whether the court's original oral order was clear and unambiguous.

At an on the record hearing a month later, Judge Morris was asked impose sanctions for the violation of the order whose terms are unknown to this reviewing court. She did not place the terms of her original order on the record at that hearing. Neither did she make explicit findings about why the objections that had been filed by DeGennaro were being overruled. Her directions were confusing: At one point, the Judge said that only tax returns from 2015 and later years were relevant, yet when DeGennaro's attorney asked for clarification about what had to be produced, Judge Morris, contradicting her earlier statement, said "give them everything they ask." (Dkt. No.

17

128, pg. 15). When the attorney asked whether that meant "eight years' of tax returns," Judge Morris cut him off and directed Crescent's attorney to "submit an order" for discovery and for sanctions – effectively ending the hearing on that issue without any judicial clarification. (*Id.* at pgs. 16, 9).

The September 19, 2019 written order was "clear and unambiguous," in that it directed production of "all documents responsive to Crescent's Requests . . . that Debtor has in his possession, custody or control, or to indicate that no such documents exist." But the contempt sanctions and attorney's fees for failure to comply were also awarded against DeGennaro in that very same order – not for violating that clear order, but for violating an order whose terms cannot now be recreated. It plainly would have been an abuse of discretion to hold a party in contempt of the first clear and unambiguous order directing him to produce documents on the very date when the order was entered.

As for the other two criteria (clear and convincing evidence of non-compliance and lack of diligent effort to comply): there cannot be clear and convincing evidence of non-compliance when the court has no idea what the terms of the order allegedly violated were. And the record at the August 27, 2019 hearing reveals that DeGennaro had made efforts to obtain responsive corporate documents from third party sources. The Bankruptcy Judge simply to dismissed these efforts, without making any finding about whether they were diligent. She did not appear to consider DeGennaro's position, asserted since the inception of the adversary proceeding, that he had been

ousted by his partner and wrongfully prevented from having access to the corporate documents; she made no reasoned, evidence-based finding that he could have accessed those documents.

(ii)     *The Standard Under Rule 37*

The original order imposing sanctions was also an abuse of discretion pursuant to Rule 37, and for much the same reasons.

The sanction was imposed for failure to comply with a court order, but the terms of that oral order were never memorialized and so were not clear and unambiguous.

Second, one of the factors to be considered when assessing a sanctions order issued pursuant to Rule 37 for failure to comply with a court order is the duration of the party's non-compliance.  Although the Second Circuit has "never held that a . . . court, confronted with willful defiance of its discovery orders, must wait any particular time before imposing *a* sanction," *Funk v. Belneftekhim*, 861 F.3d 354, 368 (2d Cir. 2017), sanctions generally have been upheld only after a party has failed to comply with several orders, spanning a period of several months if not years. *See Southern New England Tel. Co.*, 624 F.3d at 139 (noting that the offending party had refused to produce discovery documents for over two years, and that sanctions were only imposed eight months after the court finally compelled discovery); *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (per curiam) (affirming sanctions after party defied all court orders "over a span of approximately six months . . . each of which warned of the possibility of sanctions"); *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1999) (per curiam) (affirming sanctions after party "failed to heed discovery orders on at least four separate occasions, thus delaying the case nearly two years").

The facts of this case strongly counsel in favor of a finding of abuse of discretion in issuing the original sanctions order. The earliest order compelling production – an oral order, the terms of

which are unknown to this Court – was handed down on July 30, 2019. DeGennaro's attorney promised to produce the documents within seven days of that date (or so we are told, there being no record), or by August 6. When DeGennaro failed to produce the documents by that date, Crescent made a motion to compel and for sanctions a mere *nine days* later (on August 15). A second oral order – one confusing in its scope, given the contradictory statements made by the judge on the record – was issued on August 27. That was just three weeks after the purported violation of the court's order.  The very short duration of noncompliance with the court's order counsels in favor of a finding of abuse of discretion.

The third factor is whether the violation of the court's order was willful. De Gennaro unquestionably did not comply with his adversary's discovery request for some months. But a discovery request from a party is not a court order.  DeGennaro was sanctioned under Rule 37 for violating a court order. Since I have found that the terms of the court's prior oral orders were either unknowable (the initial order) or unclear (the oral order at the August 27, 2019 hearing), the first clear and  unambiguous order that could have been violated was not entered until September 19, 2019. Yet sanctions were imposed that same day. I fail to see how his prior noncompliance with the judge's oral orders could possibly qualify as willful for purposes of a contempt sanction, since there is no clarity about what those orders were.

Additionally, there is evidence in the record that would suggest the failure to produce at least the Innovative corporate records was not willful at all. The record of the hearing on August 27, 2019 reveals that DeGennaro actually had made attempts to comply with the court's order – at least insofar as it demanded production of the records of Innovative. Both in the papers filed before, and in his attorney's statements made during the August 27 hearing, DeGennaro argued that he did not have access to Innovative's records, and that he could not be compelled to produce anything

20

that he did not possess nor have control over. As noted, DeGennaro explained that his former business partner, Anthony Bartolomeo, had effectively locked him out of Innovative, and had prevented him from obtaining any of Innovative's records. Despite DeGennaro's having filed applications to examine Bartolomeo's records as part of Bartolomeo's bankruptcy proceedings (which he attached as exhibits as part of his filings), it does appear that Judge Morris fully considered DeGennaro's efforts when determining whether to hold DeGennaro in contempt. She certainly did not refer to them in making any finding of willful noncompliance – and these effort are inconsistent with willful noncompliance.

Finally, as far as this Court is aware, until the entry of the September 19 written order, DeGennaro had never received a definitive ruling on his objection that not all of his personal financial records were relevant. Even on September 19, he only received a *sub silentio* ruling on that subject (by being ordered to produce them). Prior to that date he could not possibly have willfully failed to comply with any court order.

The third Rule 37 factor is whether DeGennaro was warned in advance of the possibility that he could be held in contempt. He was not. While DeGennaro was apparently warned at the off-the-record July 30 hearing that he could be sanctioned if he failed to produce the requested documents, nothing in the record suggests that DeGennaro was advised that he was subject to an open-ended additive daily fine for failure to produce – the sort of contempt sanction that cannot be imposed without notice and an opportunity to be heard on the specific issue of the nature of the sanction. Indeed, the Second Circuit has held that "No sanction should be imposed without giving the disobedient party notice of the *particular sanction sought* and an opportunity to be heard in opposition to its imposition." *SEC v. Razmilovic*, 738 F.3d 14, 24 (2d Cir. 2013) (emphasis added); *see also World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d

Cir. 2012); *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 270 (2d Cir. 1999). There is no indication that DeGennaro was aware of the specific sanctions that he would be facing before the court imposed them at the August 27 hearing. The record of that hearing also makes clear that DeGennaro did not even have a chance to substantively argue that the sanctions were inappropriate. (*See* Dkt. No. 128).

The fourth and final factor is whether lesser sanctions would have sufficed. As far as the record shows, no lesser sanction was ever considered before Judge Morris imposed a $250 per day fine on DeGennaro. Consideration of lesser sanctions is "particularly necessary" in instances like this, in which there is no corresponding observation by the Bankruptcy Court that the opposing party (Crescent) would be "prejudiced by the absence of the documents." *Shcherbakovskiy*, 490 F.3d at 140. At the August 2019 hearing, Judge Morris did not engage in any discussion of whether DeGennaro's delay was causing prejudice to Crescent (which had requested the documents only four months earlier). She did not even discuss whether the documents were necessary for or relevant to Crescent's case at the hearing where the draconian sanction of an open-ended $250 a day fine was imposed. While I absolutely agree with Judge Morris' ultimate conclusion about the relevant of DeGennaro's personal financial records, she did not place that conclusion on the record until a year later. The court simply held DeGennaro in contempt for failing to produce all of the documents Crescent requested – again, a contempt for violating a discovery request, not a court order – and never once seriously considered whether some lesser sanction might be more appropriate to the situation.

In short, under any standard, the original sanction of $250 a day for every day of non-compliance was an abuse of discretion. The Bankruptcy Court imposed sanctions too quickly and without sufficient explanation.

That finding is a necessary predicate to the Court's consideration of the issue directly implicated by this appeal – which is whether the modification, rather than the vacatur, of the original sanction on reconsideration was itself an abuse of discretion.

### D.  <u>The Modification of the Sanction, Rather than Vacatur, was Also An Abuse of Discretion</u>

In September of this year, Chief Judge Morris modified the sanction originally imposed, while denying a motion to vacate it altogether. The precise issue on this appeal is whether the decision not to vacate constituted an abuse of discretion.  I believe that it was.

Where, as here, the original sanctions order was an abuse of discretion, the best remedy would be to vacate it and start over. In this case, that is the only appropriate remedy. Here, the original sanction appears not to have been imposed for violation of any written court order, but rather for violation of a discovery request. It was certainly not entered for the violation of any clear and unambiguous court order. And it was entered with remarkable swiftness on the very day that the first clear and unambiguous order was entered by the Bankruptcy Court. Since any sort of sanction was an abuse of discretion in those circumstances – and it was – any "modification" of the original sanction short of vacatur was also an abuse of discretion.

 In this regard, it is significant – determinative —that the issue before the court in August 2020 was whether DeGennaro should have been sanctioned a year earlier – not whether it would have been appropriate to sanction him on a new application by Crescent, which was never made. The only issue properly before the Bankruptcy Court was DeGennaro's motion for relief from the judgment against him/reconsideration of the original sanction. As to that issue, his behavior during the intervening year (when he had an appeal pending in this court from the original order) is, or ought to be irrelevant.

For this reason, modification, rather than outright vacatur, of the September 2019 sanctions award was an abuse of discretion by the Bankruptcy Court.

## CONCLUSION

I have a great deal of sympathy for the learned Chief Bankruptcy Judge in these circumstances. She is familiar with the litigants before her and it is entirely possible that she has good reason to be suspicious of Mr. DeGennaro's *bona fides* in this circumstance. She is absolutely correct in her surmise that his personal financial records are relevant to the resolution of this adversary proceeding; if they are not produced and there is no explanation for that non-production, she may well wish, after all this time, to consider – on a full record, after an appropriate hearing and with appropriate advance warnings about the nature of the sanctions under consideration– the possibility of preclusion or some other sanction, including contempt.

As for the corporate records, sanctions for non-production would only be appropriate if it were in fact the case that DeGennaro is able to access the corporate files he claims are closed to him. On the record before this court, that fact is far from clear. The fact that DeGennaro had to approach third parties in order to obtain such corporate records as he did produce suggests that this claim may not be without foundation. If sanctions, especially contempt sanctions, are being pursued for failure to produce the corporate documents, then those issues need to be fully aired, possibly even at a hearing with witnesses, in the Bankruptcy Court.

For the foregoing reasons, the September 4, 2020 order of the Bankruptcy Court modifying its order of September 29, 2020 sanctioning DeGennaro in the amount of $250 per day for a period of ninety days beginning August 28, 2019 is vacated. This matter is remanded to the Bankruptcy Court for further proceedings consistent with this order.

The Clerk of the Court is directed to close this matter on the Court's docket.  This shall constitute the written opinion of the Court.

Dated: December 8, 2020

_____
Chief Judge

BY ECF TO ALL COUNSEL